PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JAMES S. UNDERWOOD, | ) | CASE NO. 4:08CV2540 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | JUDGE O'MALLEY |
| v. | ) |  |
|  | ) | MAGISTRATE JUDGE PEARSON |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff James S. Underwood sought judicial review of the Social Security

Administration's final decision denying his application for Supplemental Security Income

("SSI").

## I.  Overview

Underwood has a documented history of abusing alcohol and illegal drugs.  In addition to

the typical evaluation required to determine whether an adult claimant is disabled, Underwood's

confirmed drug abuse requires an additional layer of analysis to determine whether the substance

abuse is a contributing factor to his disability.  Having conducted both the typical and additional

analyses, the Administrative Law Judge ("ALJ") determined that (1) Underwood's substance

abuse is a contributing factor to his disability, (2) in the absence of substance abuse, Underwood

is not disabled and, (3) there are a significant number of jobs in the national economy that

Underwood can perform.  Underwood objects to the ALJ's findings and seeks a remand to permit

the ALJ to further develop the record on the issues of whether he can work in the absence of

(4:08CV2540)

substance abuse and whether his substance abuse is a contributing factor material to the

determination of disability.[1]

Finding that the ALJ's decision denying benefits to Underwood is based upon proper

legal standards and supported by substantial evidence, the Court recommends that the Social

Security Administration's ("Agency") final decision be affirmed.

## II.  Procedural History

On August 31, 2005, Underwood protectively filed an application for Supplemental

Security Income, alleging disability due to depression, degenerative disc disease of the cervical

spine, and psychosis since September 11, 2003 .  (Tr. 16 and 18.)  Underwood's claims were

initially denied by the State Agency as a Disability Redesign Prototype Case.[2]  Underwood

appealed the State Agency denial and filed a request for a *de novo* hearing before an ALJ.  (Tr.

59.)  On March 22, 2007, Underwood's counsel appeared (without Underwood) at a hearing

---

[1]  Underwood has not sought a remand to permit the ALJ to consider the April 2008 medical records (Tr. 362) that allegedly support a diagnosis of psychosis that were submitted to the Appeals Council two months after the ALJ had rendered his decision, *i.e.*, a sentence six remand.  Because the ALJ's decision is supported by substantial evidence and Underwood has not shown that the late-submitted information was new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding – requirements of a sentence six remand – the undersigned declines to make such a recommendation.  This decision is also informed by the ALJ's agreement to hold open the record at the request of Underwood's counsel in order to receive a December 2007 (SAMI, substance abuse mental illness) evaluation (Tr. 319) and the belief that the ALJ would have been agreeable had such a request been made to permit the submission of the April 2008 records.

[2]  According to Respondent, "Plaintiff's case was part of an Agency pilot program that tested the elimination of the reconsideration level in certain jurisdictions.  See 20 C.F.R. § 416.1400.  Thus, following the initial determination, Underwood " was allowed to request a hearing before an ALJ (Tr. 53, 76)."  ECF No. 17 at 2.

(4:08CV2540)

before ALJ Charles Boyer in Pittsburgh, Pennsylvania.  (Tr. 363-66.)  Underwood's counsel could not locate his client and the ALJ stated he would issue a Notice to Show Cause why the hearing should not be dismissed.  (Tr. 365.)

Underwood's counsel withdrew on June 12, 2007 because Underwood moved to Ohio. An August 24, 2007 hearing was postponed to obtain updated medical records.  (Tr. 69.)  On December 3, 2007, Underwood and counsel appeared before ALJ Edmund Round in Cleveland, Ohio.  (Tr. 367-97.)

At the time of the hearing before ALJ Round, Underwood was 53 years old.  (Tr. 79, 373-74.)  Underwood finished 10th grade and later obtained a GED.  (Tr. 107, 374.)  Underwood has past work experience as a pipe fitter, a mixer, and a laborer.  (Tr. 103, 375.)  Underwood based his application for benefits on the allegedly disabling conditions of depression, degenerative disc disease of the cervical spine, and psychosis with an onset date of September 11, 2003.  ECF No. 13 at 1.

On February 8, 2008, ALJ Round issued a decision denying Underwood benefits.  (Tr. 16-26.)  On April 8, 2008, Underwood submitted additional evidence and requested a review of ALJ Round's decision.  The Appeals Council denied Underwood's request for review, making ALJ Round's decision the final decision of the Agency and prompting Underwood to timely appeal to this Court.  ECF No. 1.

Underwood formally presented the following issues[3]:

---

[3]  At the conclusion of his brief, Underwood also asked for a review of the ALJ's determination that he "would be able to perform jobs available in significant numbers in the national economy."  ECF No. 13 at 9.  To fully resolve the case on its merits, all issues are

3

(4:08CV2540)

1. Whether alcohol and drug use is a contributing factor material to the determination of Mr. Underwood's disability?

2. Whether Mr. Underwood can be found disabled in the absence of substance abuse?

ECF No. 13 at 1.

### III. **Judicial Review of a Final Agency Decision**

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.

The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d 535, 545 (6th Cir. 1986) (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen*, 800 F.2d at 545. "Even if supported by substantial evidence, however, a decision of the

addressed in the report and recommendation.

4

(4:08CV2540)

Commissioner will not be upheld where the [Social Security Administration] fails to follow its

own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

In determining the existence of substantial evidence, the reviewing court must examine

the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001).  The district

court may look into any evidence in the record, regardless of whether it has been cited by the

ALJ.  *Mullen*, 800 F.2d at 545.  The reviewing court, however, may not try the case *de novo*,

resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*, 889 F.2d at

681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### IV.  Standard for Establishing Disability

#### A.  The Regulatory Requirements, Generally

To establish disability under the Act, a claimant must show that she is unable to engage in

substantial activity due to the existence of "a medically determinable physical or mental

impairment that can be expected to result in death or that has lasted or can be expected to last for

a continuous period of not less than twelve months."  *See* 42 U.S.C. §§ 423(d)(1)(A),

1382(c)(a)(3)(A).   The claimant's impairment must prevent him from doing his previous work,

as well as any other work existing in significant numbers in the national economy.  *See* 42 U.S.C.

§§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step

sequential evaluation.  If a claimant can be found disabled or not disabled at any step of the

5

(4:08CV2540)

sequential evaluation, the review ends.  20 C.F.R. § 404.1520(a).  At Step One, the ALJ

considers the claimant's work activity.  A claimant is not disabled if engaged in substantial

gainful activity, *i.e.*, working for profit.  At Step Two, the ALJ considers the medical severity of

the claimant's impairments.  A claimant is not disabled if she does not have a severe medically

determinable physical or mental impairment that also meets the duration requirement in 20

C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration

requirement.  At Step Three, the ALJ determines whether the claimant has an impairment that

meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration

requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is disabled if she has

an impairment that meets the listing and the duration requirement.  Before considering the fourth

step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the

claimant's ability to perform physical and mental work on a sustained basis despite limitations

from impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits him to

perform past relevant work.  The claimant bears the burden of proof at steps one through four.

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  At Step Five, however, the

burden shifts to the Commissioner to identify "a significant number of jobs in the economy that

accommodate the claimant's residual functional capacity (determined at step four) and vocational

profile."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At the final step, Step Five, the ALJ considers the claimant's RFC and her age, education,

and work experience to determine whether the claimant may work.  Even if the claimant's

impairment does prevent her from doing her past relevant work, if other work exists in the

6

(4:08CV2540)

national economy that the claimant can perform, then the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the ultimate burden of proof on the issue of disability.  *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled");  *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability.").  Significantly, he bears the burden of proving disability up to Step Five of the sequential evaluation.  *See* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("the Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy").  The burden of proof regarding the establishment of disability onset date lies with the claimant.  *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).

Moreover, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision.  *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  Lastly, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations.  20 C.F.R. § 404.1512(c).

**B. Regulatory Requirements when Drug Abuse and Alcoholism Are at Issue**

In The Contract with America Act of 1996 ("Welfare Reform Act"), Pub.L.No. 104-121, 110 Stat. 852, 853 (eff. Mar. 29, 1996), Congress amended the Social Security Act to prohibit the award of benefits to individuals for whom alcoholism or drug addiction is a contributing factor material to their disability determination.  *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3) (J). The

7

(4:08CV2540)

House Report on the Act specifically states that this law was enacted to:

> eliminate payment of cash Social Security and SSI disability benefits to drug addicts and alcoholics, to ensure that beneficiaries with other severe disabilities who are also drug addicts or alcoholics are paid benefits through a representative payee and referred for treatment and to provide additional funding to States to enable recipients to continue to be referred to treatment sources . . . .

H.R. 104-379, 104th Cong., 1995 WL 717402 (Leg.Hist.) at *20 (Dec. 4, 1995).

Section 404.1535 of Title 20 of the Code of Federal Regulations governs whether a

claimant's drug or alcohol use is a contributing factor material to the determination of disability.[4]

The primary factor driving a drug abuse and alcoholism disability determination is whether the

---

[4] Section 404.1535 states:

**How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability**.

a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

8

(4:08CV2540)

individual would be disabled if he or she stopped using drugs or alcohol.  In order to determine

whether a claimant's alcohol or drug use precludes them from receiving Social Security benefits

the ALJ must first determine whether a claimant is disabled and then determine whether alcohol

or drug use is a material contributor to the determination of disability, *i.e.* whether severe enough

limitations would remain in the absence of alcoholism or drug addiction.[5]  20 C.F.R. §

404.1535(a).

Claimant bears the burden of proving that alcoholism or drug addiction is not a

contributing factor material to the claimed disability.  *See* *Parra v. Astrue*, 481 F.3d 742, 748

(9th Cir. 2007) ("We thus make explicit what was intimated by our earlier cases, that the

claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor

material to his disability."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002)  ("[Plaintiff]

carries the burden of proving her substance abuse is not a contributing factor material to the

claimed disability."); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)  ("Brown bears the

burden of proving that drug or alcohol addiction is not a contributing factor material to her

disability. Brown did not carry this burden.").  The ALJ, however, retains the responsibility of

developing a full and fair record in the non-adversarial administrative proceeding.  *Hildebrand v.*

*Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).  "If the ALJ is unable to determine whether

substance use disorders are a contributing factor material to the claimant's otherwise-

_____

[5] *Parton v. Commissioner of Social*, 2008 WL 4657086 * 9 (S.D. Ohio, Oct 21, 2008)
("A finding of disability is a condition precedent to an application of § 423(d)(2)(C). Obviously,
if the claimant is found not disabled, despite whatever limitations he or she has, including those
related to substance or alcohol abuse, the question of whether claimant's limitations are impacted
by such drug or alcohol use is moot.").

(4:08CV2540)

acknowledged disability, the claimant's burden has been met and an award of benefits must

follow.  *See Fastner v. Barnhart*, 324 F.3d 981, 86 (8th Cir. 2003); *see also Brueggeman v.*

*Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) ("In colloquial terms, on the issue of the materiality

of alcoholism, a tie goes to [the claimant].").

The ALJ must reach the determination regarding the claimant's disability initially using

the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any

effects that might be due to substance use disorders.  *Ball v. Massanari*, 254 F.3d 817, 821 (9th

Cir. 2001); *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001).  Upon a finding that a claimant has

severe impairments, the Regulations dictate that the ALJ next determine whether the claimant

would still be disabled without the substance abuse.  20 C.F.R. § 404.1535 indicates that in

making this determination, the ALJ should "evaluate which of [the] current physical and mental

limitations, upon which [s/he] based [the] current disability determination, would remain if [the

claimant] stopped using drugs or alcohol and then determine whether any or all of [the

claimant's] remaining limitations would be disabling."  If a claimant has drug abuse and

alcoholism-related physical or psychological impairment(s), or a combination thereof, that are

disabling even when drug or alcohol abuse has stopped, the claimant is disabled.  Stated

differently, if the limitations remaining after the drug and alcohol use has stopped are not

disabling, the substance abuse is a contributing factor material to the disability.  *Id.*

## V.  Law and Analysis

### A.  Underwood's Drug Abuse and Alcoholism is a Contributing Factor Material to the Determination of His Disability

Underwood argues that "[t]he ALJ's decision that substance abuse is a contributing factor

10

(4:08CV2540)

material to the determination of claimant's disability is erroneous and is not supported by the

substantial weight of the evidence." ECF No. 13 at 5.  Underwood further argues that, " the

substantial weight of the medical evidence in the record shows that alcoholism or drug addiction

is not material to the determination of disability, because Mr. Underwood's disability persists

despite abstinence from substances."[6] ECF No. 13 at 7.  Underwood notes that "[t]he records

show that despite two periods of abstinence from substances, claimant's psychiatric symptoms

persisted,"[7] and highlights an assessment where Underwood had trouble with "understanding,

coherency, concentration, talking, answering, and sitting (Tr. 100)," however, the assessor's

"comments did not suggest any suspicions of substance abuse."[8] [9] ECF No. 13 at 7-8.  It is

---

[6] "Although there were times when the claimant tested positive for cocaine or admitted to drinking alcohol, his symptoms of psychosis persisted in the periods of time when he abstained from those substances." ECF No. 13 at 8.

[7] Underwood offered that "AGH [Allegheny General Hospital] had been treating claimant for his mental health issues in 2004 and 2005.  On March 8, 2005, AGH notes that claimant suffers from depressed mood, tearfulness, guilt, irritability, conflicts with others, concentration problems, difficulty sleeping, and thoughts of death *despite being clean for 9 months*. (TR. 143).  On October 2, 2007, claimant applied for housing and treatment with Meridian Services.  He participates in the SAMI (substance abuse mental illness) program which provides housing and consistent treatment for substance abuse and mental illnesses.  Claimant must submit to random testing and test negative to remain in the program.  After four months in the program, claimant's psychiatrist, Dr. Paolone, diagnosed him with psychosis. (TR 362). These records were sent to the Appeals Council on April 14, 2008, but were not available to the ALJ.  The records included treatment notes from Meridian Services SAMI program noting that claimant's thought process continued to be disorganized, and he was often tearful (Tr. 351, 353, 357, and 358)." ECF No. 13 at 7.

[8] Underwood references a case worker at Social Security (ECF No. 13 at 7).

[9] In the same paragraph, Underwood details his 2007 intake at Meridian Services where he had problems focusing, and was having active hallucinations and delusions throughout the assessment.  He tested positive for cocaine that morning.  (Tr. 309.)  Underwood also details his 2007 psychiatric evaluation with Dr. Bengala in this paragraph.  During this evaluation he said

(4:08CV2540)

Underwood's contention that he "has met his burden of showing alcoholism or drug addiction is not material to the determination of his disability." ECF No. 13 at 7-8. The undersigned disagrees with Underwood's interpretations of the record and his conclusion that his polysubstance abuse is not material to the determination of his disability.[10]

The ALJ outlined the relevant applicable law for claimants with impairments caused by or connected to drug abuse and alcoholism and against that backdrop conducted a thorough analysis of Underwood's case. (Tr. 17-26.) The ALJ agrees that Underwood has impairments and that when his substance abuse is considered in the Five-Step analysis these impairments meet the requirements of Listing 12.09,[11] and Underwood is disabled. (Tr. 18-19.)

───────────────

"he was not from this planet," and "the voices told him to come here." (Tr. 320.) Dr. Bengala diagnosed Underwood with psychosis, NOS r/p Schizophrenia, Depression and Poly-substance Abuse. (Tr. 325.) It is unclear why Underwood would include the Meridian and Dr. Bengala evaluations in a section of his arguments where he attempts to prove that the "record shows that alcoholism or drug addiction is not material to the determination of disability." ECF No. 13 at 7. This evidence bolsters the ALJ's decision and drives home the point that Underwood's drug abuse and alcoholism are contributing factors material to his disability determination.

[10] *See also* the final section of this Report regarding Underwood's misinterpretation of the evidence.

[11] The ALJ admitted that he found

> Mr. Underwood is credible concerning the following symptoms and limitations: He hears voices and stated he prays a lot. He testified that he believes people are always out to get him. He stated he had to get a drink (of alcohol) just so he could "fall out." He stated he thinks a part of his brain is burnt and he does not know what his ability is to concentrate. He stated that he received workers['] compensation for twenty-two years for back problems. He stated that, if he wants to sleep, he has to "guzzle" down a drink of alcohol.

(Tr. 19-20.)

12

(4:08CV2540)

The crux of the matter is whether Underwood's drug abuse and alcoholism are material to his disability designation, *i.e.* whether Underwood is disabled independent of the drug abuse. "As the ALJ observed, Plaintiff's 'history of substance abuse is noted throughout the record and is frequently associated with periods of depression.' (Tr. 20)." ECF No. 17 at 16.  Under the applicable federal law, drug addiction or alcoholism may not be a material contributing factor to a disability finding.  *See* Pub.L. No. 104-121 § 105(a)(1).  In accordance with this restriction, the ALJ looked to periods of abstinence in the record to determine whether Underwood suffers from work-limiting ailments independent of substance abuse.

Specifically, the ALJ found that,

There is evidence before me of a period during which Mr. Underwood was presumably drug-free, namely a period from about August 2004 to August 2005 when he was in jail.

He was admitted to Allegheny Correctional Institution on August 15, 2004.  He had a psychological evaluation on August 17.  The diagnoses were an adjustment disorder with depressed mood and alcohol/cocaine abuse in remission, with diagnoses of a depressive disorder nos [sic] and conduct disturbance not being ruled out.  He was assigned a GAF of 35 to 40, indicating serious symptoms (Exhibit B3F at 8).

He had another psychological evaluation on April 6, 2005.  The only diagnosis was polysubtance abuse in remission and the GAF was 60, indicating moderate tending toward mild symptoms (Exhibit B3F at 6).  There is no mention in either of these evaluations of any form of psychosis.  Indeed, by April 2005, when he had been in a controlled environment for about 8 months, the only mental health diagnosis is one that acknowledges that he used drugs and alcohol in the past.

Consequently, I conclude that, when he was free of drugs and alcohol he was much healthier mentally that [sic] more recently, when his drug abuse is well documented.  While he does have a psychotic disorder by Dr. Bengala's diagnosis (Exhibit B 11F), he also continues to use drugs and alcohol.  *Mr. Underwood is therefore unable to prove that his psychosis and/or depression are disabling in the absence of substance abuse.*

13

(4:08CV2540)

(Tr. 21-22); (emphasis added).[12]

The ALJ also provided several additional examples of evidence that convinced him that,

"Mr. Underwood's use of substances severely affects his ability to function in the work

environment and therefore his substance use disorder is a contributing factor material to the

determination of disability (20 CFR 416.935)."  (Tr. 21.)  These examples include:

> In February 2004, he was seen by psychiatry for an evaluation and he was reported as tangential and tearful when speaking to Wally Hover, M.D.  Mr. Underwood indicated that he was clean from cocaine for several months but had alcohol the night prior (Exhibit B1F at 15-20)
> . . .
>  [On May 27, 2006] he presented to the [St. Elizabeth Hospital] emergency department with an elevated blood sugar level of 387.  He admitted to drinking a six-pack of beer a day and to using cocaine "off and on."  The urine drug screen was positive for cocaine . . . . (Exhibit B10F at 28-31).
> . . .
> On June 26, 2006, Mr. Underwood presented to St. Elizabeth outpatient clinic saying that he needed medication.  His blood sugar level was elevated to 378.  He said that he had not taken medication for six to seven weeks.  He reported being depressed and having crying spells . . . . He reported drinking a pint of beer or wine every day and said he has last used crack the day before . . . (Exhibit B11F, 6-7).
> . . .
> On June 1, 2007, he went to St. Elizabeth Clinic again, this time complaining of chronic back pain and numbness of his feet.  The treating physician noted, "taking street drugs – Vicodin, Percocet, crack.  Smoked [marijuana] lately." . . . (Exhibit B11F at 4)
> . . .
> On October 2, 2007, Carrie Repasky, M.S. Ed., P.C., a counselor at Meridian Services, did a diagnostic assessment of Mr. Underwood . . . . He said he was involved in Alcoholics Anonymous and Narcotics Anonymous, but the toxicology

---

[12] "The GAF scale is used to report the clinician's judgment of an individual's overall level of functioning. A GAF score in the range of 41 to 50 is indicative of serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).  *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of* Mental *Disorders*, 34 (American Psychiatric Association, 4th ed. 2000) (*DSM-IV*)."  *See* ECF No. 17, n. 6.

(4:08CV2540)

> screen was positive for cocaine. Ms. Repasky said that he "appeared to be actively psychotic at the time of the assessment." She diagnosed cocaine abuse and could not rule out diagnoses of cocaine dependence and schizophrenia. . . . (Exhibit B10F).
> . . .
> On December 28, 2007, Michael Bengala, M.D., a Meridian psychiatrist, evaluated Mr. Underwood. Mr. Underwood said, "I am not from this planet" and that he was "trying to use less drugs." Dr. Bengala noted that his substance abuse included alcohol, cannabis and cocaine. He was restless, avoided eye contact and partially cooperative on mental status exam. His mood was depressed and his thought process was tangential with loose associations . . . . (Exhibit B11F).

(Tr. 19-21.)

Based upon a review of the record, the undersigned finds that Underwood has not met his burden of proving that drug abuse and alcoholism are not contributing factors material to his disability determination. Moreover, there is substantial evidence to support the ALJ's determination that, "the claimant's substance use disorder is a contributing factor material to the determination of disability (29 CFR 416.935)," and, therefore, "the claimant has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision." (Tr. 26.)

### B. Underwood's Impairments would not Meet or Equal a Listing if he Discontinued His Polysubstance Abuse

At the Third Step of the sequential evaluation, the ALJ determines whether the claimant has an impairment that meets or equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If an impairment exists that meets the description of a Listing or its equivalent, the claimant will be found disabled. *See* 20 C.F.R. § 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age,

15

(4:08CV2540)

education, and work experience."). The Supreme Court has emphasized that "for a claimant to show that his impairment matches a listing it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added). Significantly, a claimant has the burden of showing that he has satisfied each individual requirement of a Listing. *Thacker v. Soc. Sec. Admin.*, 93 F. Appx. 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency."). "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citations omitted).

When a claimant alleges disability due to a mental impairment, the ALJ must use a special technique to evaluate the limitations imposed by the alleged impairment. When applying the special technique, the ALJ must assess the level of severity of a claimant's mental impairment by rating a claimant's limitations and restrictions in four functional areas:

(1) activities of daily living[13];

(2) social functioning[14];

---

[13] "Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." Listing 12.00(C)(1).

[14] "Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." Listing 12.00(C)(2).

16

(4:08CV2540)

     (3) concentration, persistence or pace[15]; and

     (4) episodes of decompensation.

*See* 20 C.F.R. § 416.920a(c)(3) (*citing* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)).

     These four functional areas correspond to the requirements of "Paragraph B" of the Agency's mental impairment Listings at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00 *et seq*.  The first three criteria are assessed using a five-point scale: none, mild, moderate, marked[16] and extreme; and the last criterion is assessed using a four-point scale: none, one or two, three, four or more.  20 C.F.R. § 416.920a(c)(4).

     Underwood's impairments were initially evaluated against the requirements for Listing 12.09.  When considering the effects of his substance abuse, the ALJ found that Underwood's impairments "satisfy the 'Paragraph B' criteria" and, therefore, meet Listing 12.09, meaning that Underwood is disabled while using drugs and alcohol.[17]  (Tr.19.)  The ALJ detailed doctors visits, diagnoses, treatment notes, assessments/evaluations, and evidence he found credible concerning Underwood's symptoms and limitations.  The ALJ also found that Underwood had marked restriction and difficulties in (1) activities of daily living, (2) social functioning, and (3)

---

     [15] "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  Listing 12.00(C)(3).

     [16] Marked is generally defined as when several activities or functions are impaired, or even only when one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function independently, appropriately, effectively, and on a sustained basis.  20 C.F.R. Pt. 40420 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.

     [17]  Listing 12.09 directs that Paragraph B –  Depressive syndrome –  is to be evaluated under § 12.04.

(4:08CV2540)

concentration, persistence or pace, and (4) that Underwood had experienced no episodes of decompensation.  (Tr. 19-21.)

After determining that Underwood met Listing 12.09 while abusing drugs and alcohol, the ALJ appropriately conducted a second Five-Step analysis excluding Underwood's substance abuse and found that "if the claimant stopped abusing substances, he would still have severe impairments but *not* have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d))."  (Tr. 22.)  The ALJ determined that when Underwood was evaluated independent of the substance abuse, "the evidence [] shows that his psychosis (listing 12.03) and depression (listing 12.04) would limit him to the following degree in the following functional areas:" (1) mild functional limitations in activities of daily living and difficulties in maintaining social functioning, (2) moderate functional limitations in maintaining concentration, persistence, or pace, and (3) no repeated episodes of decompensation.  (Tr. 22.)  In sum, Underwood, when free of drugs and alcohol, would not have an impairment that met a Listing.  (TR. 22.)

The ALJ fully articulated his evaluation of Underwood's mental impairments with and without the consequences of drug and alcohol abuse.  The ALJ determined that, independent of his drug and alcohol abuse, Underwood does not meet or equal the requirements of Listing § 12.09.  The ALJ's conclusion was reached in accordance with the regulations and supported by substantial evidence.

### C.  In the Absence of Drug Abuse and Alcoholism, Underwood is not Disabled

#### 1.  RFC Determination

(4:08CV2540)

After determining that "[i]f the [Underwood] stopped the substance use, he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, appendix 1(20 CFR 416.920(d))," the ALJ appropriately moved forward in the sequential evaluation and found that Underwood "retain[ed] the residual functional capacity to do a range of light work." (Tr. 22.) In making the determination that Underwood could do a range of light work, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (Tr. 23-25.) The ALJ concluded that "if Mr. Underwood is free of substance abuse, his ability to function increases and there are not symptoms of psychosis present." (Tr. 24.)

Underwood "disagrees with the ALJ's analysis as to whether he can perform work in the national economy that exists in significant numbers." ECF No. 13 at 8. Underwood suggests that, "even in the absence of his substance abuse, he would not be able to perform jobs available in significant numbers in the national economy," that "the ALJ has not met his burden of proof, and that the case should be remanded to the ALJ for further consideration in light of the evidence presented herein." ECF No. 13 at 8-9.

### 2. Without Drug Abuse and Alcoholism Underwood has the RFC to Perform a Range of Light Work

The Residual Functional Capacity ("RFC") finding is an administrative assessment of what an individual can still "do despite [his or her] limitations." *See* 20 C.F.R. § 416.945(a)(1); SSR 96-8p. The ALJ applies a legal standard to the medical facts concerning Claimant's functional abilities when determining a claimant's RFC. *See Peterson v. Chater*, 96 F.3d 1015,

19

(4:08CV2540)

1016 (7th Cir. 1996).  Thus, the ALJ's determination of a claimant's RFC is a legal decision

rather than a medical one.  *See* 20 C.F.R. § 416.927(e)(2); SSR 96-5p, 61 Fed. Reg. 34471,

34474 (1996).  As such, the final responsibility for deciding issues such as the RFC is reserved to

the Commissioner.  20 C.F.R. § 416.946(c).

A statement from a medical source about what a claimant can do is "medical opinion"

evidence that an ALJ must consider together with all of the other relevant evidence when

assessing an individual's RFC.  *See* SSR 96-5p, 61 Fed. Reg. at 34472.  However, a "medical

source statement may not be equated with the administrative finding known as the RFC can often

be 'dispositive'."  *See* 20 C.F.R. § 416.927(e).  Therefore, the Commissioner's Regulations leave

the final responsibility for deciding a claimant's RFC to the Commissioner.  *See* 20 C.F.R. §

416.927(e)(2).

After considering all physical and mental symptoms and the extent to which those

symptoms could reasonably be accepted as consistent with the objective medical evidence and

other evidence, the ALJ determined that Underwood had the residual functional capacity to

perform a range of light work under certain specified conditions.  (Tr. 22.)  He further specified

that Underwood "should be precluded from tasks that require hyperextension [sic] of the neck,

*i.e.* looking at the ceiling.  He should be limited to simple routine, low-stress tasks where there is

no requirement for arbitration, confrontation, negotiation, directing the work of others, or being

responsible for the safety of others."  (Tr. 23.)

In determining Underwood's RFC, the ALJ appropriately followed the two-step analysis

wherein he first determines if mental or physical impairments exist that could reasonably be

(4:08CV2540)

expected to produce Underwood's symptoms.  (Tr. 22-23.)  And, if such impairments exist, the

ALJ is required to evaluate the intensity, persistence, and limiting effects of those symptoms to

determine the extent to which they limit Underwood's ability to work.  In completing these tasks,

it is incumbent upon the ALJ to assess the claimant's credibility.  In the instant matter, the ALJ

expertly conducted the above-described analysis, and articulated the process and his conclusions

in his written decision.  (Tr. 22-23.)

### 3.  The Credibility Assessment is Integral to an RFC Determination

Generally, it is for the Secretary and his examiner, as the fact finders, to pass upon the

credibility of the witnesses and weigh and evaluate their testimony.  *See Heston*, 245 F.3d at

536.  Specifically, credibility determinations regarding a claimant's subjective complaints rest

with the ALJ.  *See Hopkins v. Comm'r of Soc. Sec.*, 96 Fed. Appx. 393, 395 (6th Cir. 2004)

(*citing Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)).  The

ALJ's credibility findings are entitled to considerable deference and should not be discarded

lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

Although an ALJ's credibility finding is entitled to great deference, it must nonetheless be

supported by substantial evidence.  *See King v. Heckler*, 742 F.2d 968, 975 (6th Cir.1984) (an

ALJ's adverse credibility finding was not supported by substantial evidence where the claimant's

testimony was consistent with uncontradicted medical evidence).

When an individual alleges disabling symptoms, 20 C.F.R. § 416.929 requires the ALJ to

follow an outlined process for evaluating these symptoms.  The ALJ must determine whether

objective medical evidence supports the claimant's allegations regarding the disabling effects of

21

(4:08CV2540)

the impairment, *i.e.,* symptoms.  *See Villareal*, 818 F.2d at 463.  If the ALJ finds that the

objective medical evidence does not support the claimant's allegations, the ALJ may not simply

reject the claimant's statements, but must consider them in light of the entire record.  *Id.*  In

assessing the credibility of statements, the ALJ must look to the relevant evidence in the record.

*See* SSR 96-7p.  In the medical evidence, the ALJ should consider seven factors, as they may be

relevant to a particular claim.[18]  The ALJ need not detail his analysis of each of the seven factors,

but should make clear that she considered all relevant evidence.  *See Cross v. Comm'r of Soc.*

*Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

  If the ALJ rejects a claimant's testimony as not being credible, the ALJ must clearly state

his reasons so as to make obvious to the individual and to any subsequent reviewers the weight

given to the individual's statements and the reason for that weight.  *Id.* at 733; SSR 96-7p; *Auer*

*v. Sec'y of Health & Human Servs.*, 830 F.2d 94, 95 (6th Cir. 1987).

  In the instant case, the ALJ found that Underwood's allegations were not entirely

credible.  (Tr. 24.)  The ALJ stated his reasons for partially rejecting Underwood's credibility.

(Tr. 24-25.)   Although the ALJ did not individually discuss each of the seven factors, his written

decision demonstrates that he considered the relevant evidence.  (Tr.  24-25); *See Cross*, 373 F.

---

  [18]  The seven factors are: (1) individuals daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factor concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p.

(4:08CV2540)

Supp. at 733.  The ALJ's decision comports with the process outlined in 20 C.F.R. § 416.929.

Therefore, this Court defers to the ALJ's determination of credibility, as it is supported by

substantial evidence.

After outlining the appropriate process for analyzing symptoms, and the seven factors for

assessing credibility, the ALJ found that even if "Underwood stopped the substance abuse, . . .

his medically determinable impairments could reasonably be expected to produce the alleged

symptoms, but that his statements concerning the intensity, persistence and limiting effects of

these symptoms are [nevertheless] not entirely credible."  (Tr. 24.)  Underwood's testimony and

relevant medical evidence show "if Mr. Underwood is free of substance abuse, his ability to

function increases and there are no symptoms of psychosis present."  (Tr. 24.)[19]  The ALJ noted

that "Underwood's severe psychological impairments are exacerbated while using alcohol and

drugs.  However, while abstinent, he is cooperative, coherent and logical."  (Tr. 24.)  The ALJ

also considered Underwood's depression and severe degenerative changes in his cervical spine.

The ALJ's RFC assessment accommodated these conditions by including "simple repetitive work

without intricate demands of socialization" and a restriction on "hyperextension of his cervical

spine." (Tr. 24-25.)

### D.  Vocational Expert Testimony

Recognizing that Underwood did not have past relevant work, the ALJ appropriately

moved on to consider what work might be available in significant numbers.  In response to a

---

[19]   *Citing* discussion in Finding 4 wherein the ALJ explains that if Underwood stopped
the polysubstance abuse, he would have remaining severe impairments but not disabling
impairments.

23

(4:08CV2540)

hypothetical customized to mirror Underwood's RFC, the Vocational Expert determined that

Underwood could perform other work.  In making this determination, the Vocational Expert

considered Underwood's vocational factors of age, education, and work experience.  20 C.F.R. §

404.1560(b)(2).  Underwood objects to the Vocational Expert's determination and the ALJ's

reliance upon it.  For the following reasons, Underwood's objections are not well taken.

### 1.  The ALJ Properly Relied on the Testimony of the Vocational Expert

It is within the province of the ALJ to determine whether to rely on the testimony of a

vocational expert.  *See Sias v. Sec'y of Health & Human Servs*, 861 F.2d 475, 480 (6th Cir. 1988)

("[i]t is the Secretary's job to evaluate the trustworthiness of a vocational expert's testimony).

Such findings by the ALJ are entitled to substantial deference upon review.  *See King,* 742 F.2d

at 975 (6th Cir. 1984).  It is certainly true that if the expert's testimony does not take into account

the medical status of the claimant, or if the expert is unable to testify without qualification about

the jobs a claimant can perform, the ALJ may not rely on his opinion.  *Hall v. Bowen,* 837 F.2d

272, 274 (6th Cir.1988); *see also Graves v. Sec'y of Health, Education and Welfare,* 473 F.2d

807 (6th Cir.1973); *Vasquez v. Schweiker,* 701 F.2d 733 (8th Cir.1983).  These

deficiencies did not occur here.

Underwood's criticism of the ALJ's reliance on the Vocational Expert's testimony is

without merit.  The ALJ properly consulted the Vocational Expert.  Upon doing so, the expert

identified at least three unskilled, light work occupations that Underwood was capable of

performing for which there are thousands of jobs regionally and millions nationally.  (Tr. 394-

95.)  The ALJ considered the entire record, including Underwood's testimony before concluding

24

(4:08CV2540)

that the expert's testimony was reliable.  (Tr. 394.)   The ALJ's conclusion, therefore, was in

accordance with the regulations and supported by substantial evidence.

> **2.    A Significant Number of Jobs Exist to Accommodate Underwood's
> Functional Capacity and Vocational Profile**

A Vocational Expert's testimony can constitute substantial evidence to support the ALJ's

findings that a claimant is capable of performing a significant number of jobs in the economy.

*Bradford v. Sec'y of Dep't of Health & Human Servs*., 803 F.2d 871, 874 (6th Cir. 1986) (per

curiam).  When an expert testifies that a significant number of jobs exist for which a claimant is

qualified, it is immaterial that the number is a small percentage of the total number of jobs in a

given area, as long as the experts testimony is in response to an ALJ's hypothetical question that

accurately portrays a claimant's abilities.  *Hall*, 837 F.2d at 275; *Davis v. Sec'y of Health &*

*Human Servs*., 915 F.2d 186, 189 (6th Cir. 1990).  In *Hall*, the court outlined criteria for

determining whether work exists in significant numbers in the national economy.[20]  *Hall*, 837

F.2d 274-75 (6th Cir. 1988).   The *Hall* court also indicated that ultimately the determination of

whether a particular number of jobs is significant should be left to the fact finder's common

sense in weighing the statutory language as applied to particular situations.  *Hall*, 837 F.2d at

275.

At Step Four, the ALJ determined that Underwood had no past relevant work.  (Tr. 25.)

With that determination, the burden shifted to the Agency to show that a "significant number" of

---

[20]    Those criteria include: (1) level of the claimant's disability; (2) reliability of the
Vocational Expert's testimony; (3) reliability of the claimant's disability; (4) distance the
claimant is capable of traveling to engage in the assigned work; (5) the isolated nature of the job;
and (6) the type and availability of such work.  *Hall, 837 F.2d at 274-75*.

25

(4:08CV2540)

jobs existed in the national economy that the Underwood could perform, consistent with his

residual functional capacity, and vocational factors, including age, education, and work

experience.  (Tr. 25); 20 C.F.R. § 416.960(c)(1)-(2); *Cole v. Sec'y of Health & Human Servs.,*

*820 F.2d 768, 771 (6th Cir. 1987).*

To determine if there was a "significant number" of jobs in the national economy that

Underwood could perform the ALJ turned to Ms. Smith, the Vocational Expert.  The ALJ posed

a detailed hypothetical to the Vocational Expert into which he weaved all of Underwood's

limitations.  (Tr. 394.)  Specifically, the ALJ asked the following:

> This hypothetical worker is 53-years-old, has the equivalent of a high school
> education, no currently relevant vocational training.  Exertionally this hypothetical
> worker can do a range of light work and specifically what I mean by that is the
> hypothetical worker can sit, stand or walk for six hours during an eight-hour day with
> normal breaks, lift carry, push or pull 10 pounds occasionally.  He's further limited
> in that he is precluded from tasks that require hyper extension of the neck, and by that
> I mean looking at the ceiling and he's further limited to simple, routine, low stress
> tasks where there is no requirement for arbitration, negotiation, confrontation,
> directing the work of others or being responsible for the safety of others.  And that's
> the hypothetical worker, Ms. Smith.  We have no past relevant work so I needn't ask
> you about that, I would like to ask you to assume though that this hypothetical worker
> has the same work experience Mr. Underwood does.  My question is considering the
> hypothetical worker's age, education, work experience and limitations, are there jobs
> in the national or regional economy that the hypothetical worker could do?

(Tr. 394.)

In response to the hypothetical question, the Vocational Expert identified approximately

3,597,000 unskilled, light exemplar jobs in the national economy, as a mail clerk, cleaner, and

ticket seller.  (Tr. 394-95.)

On cross examination, Underwood's counsel asked if in the same hypothetical, "the

hypothetical worker was off task due to psychosis probably 15 minutes out of each hour [or 25%

26

(4:08CV2540)

of the time] what would your analysis be?"  (Tr. 396.)  The Vocational Expert answered that there would be no jobs available.

The ALJ, however, reasonably credited only those restrictions supported by the record as a whole, and rejected those based on unsupported allegations such as Underwood's need to be off task 25% of the time outside of usual work breaks as suggested by Underwood's counsel.  (Tr. 396.)  *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994).

The Vocational Expert identified a significant number of jobs in the national economy that would accommodate Underwood's RFC and vocational profile.  *Varley,* 820 F.2d at 779-80. The ALJ reasonably relied on the Vocational Expert's testimony to find Underwood not disabled. The Court finds that the ALJ's decisions in Steps Four and Five of the obligatory sequential analysis were supported by substantial evidence.

### E.  That Underwood's Conclusions Are Also Supported by Substantial Evidence is not a Basis for Overturning the ALJ's Decision

It is Underwood's opinion that the ALJ's decision was erroneous and not supported by substantial evidence.  ECF No. 13 at 5.  Underwood insists that the substantial weight of the medical evidence shows that his disability persists even when he is sober, and therefore, his drug abuse and alcoholism are not a contributing factor material to the determination of disability. ECF No. 13 at 5.  Underwood alludes to proof that, in his opinion, he was disabled even when drug free is supported by evidence of Underwood's psychiatric symptoms found throughout the record.  ECF No. 13 at 7-8.  Underwood's argument is not persuasive for at least two reasons.

First, Underwood's "proof" does not show that impairments meeting or equaling a Listing continued when he abstained from drug abuse.  Rather, the record is replete with accounts of

(4:08CV2540)

Underwood's persistent drug usage coupled with mental consequences. Underwood relies

heavily on the October 2, 2007 and the December 28, 2007 SAMI (Meridian) evaluations. His

reliance is misplaced because both evaluations clearly reflect the continued use of drugs or

alcohol and consequential mental problems. He tested positive for cocaine and showed signs of

psychoses on October 2, 2007. Similarly, the record for December 28, 2007 shows that, although

Underwood stated he was "trying to use less drugs," he continued to use alcohol, cannabis and

cocaine and showed symptoms of mental illness such as hearing voices and being depressed.

(Tr. 320-321.) Earlier evaluations mirror the later ones. Underwood consistently abused drugs

and alcohol throughout the period of alleged disability. (See e.g. Tr. 151, 141, 272-279, 289,

295, 305 and 308.)

It appears that when incarcerated and, presumably, free of drugs and alcohol,

Underwood's mental state improved. The record reflects that Underwood was incarcerated at

least twice during the period of his alleged disability. The first term of incarceration occurred on

February 10, 2004 following an attack on his then girlfriend and a night of ingesting alcohol and

drugs provided by the girlfriend. (Tr. 151.) The resultant initial assessment which logically

would have been influenced by Underwood's recent, pre-incarceration drug and alcohol use

showed depression, tearfulness, low cognitive ability, poor insight and limited judgment, among

other things. (Tr. 155). His next known period of incarceration occurred in August 2004. The

initial evaluation for that period of incarceration occurred just 2 days after his incarceration and,

again, reflected his recent past drug and alcohol usage and showed "serious symptoms" and a

GAF of 35 to 40, even though his alcohol and cocaine abuse was, presumably, in remission due

28

(4:08CV2540)

to his two days of incarceration.  (Tr. 22, 175-176.)   After approximately 8 months of

incarceration, in April 2005, upon mental status evaluation, Underwood was oriented to person,

place, and time; had a good ability to relate; had good recent memory and fair remote memory;

denied any suicidal or homicidal ideation; normal intelligence; good judgment; good insight; and

his perception was within normal limits.  (Tr. 173.)  He showed no sign of pyschoses, only "mild

symptoms" and a much improved GAF of 60.  (Tr. 22, 173-174.)

     The ALJ's conclusion that Underwood is "much healthier" when "free of drugs and

alcohol" is well supported by the record.  (Tr. 22.)  Most importantly, the ALJ's conclusion that

"Mr. Underwood is . . . unable to prove that his psychosis and/or depression are disabling in the

absence of substance abuse" is also supported by substantial evidence.  (Tr. 22.)

     Finally, Underwood misapprehends what is required to reverse an ALJ's decision that is

supported by substantial evidence as in this case.  The test is not whether substantial evidence

*also* supports Underwood's position.  An ALJ's decision "cannot be overturned if substantial

evidence, or even a preponderance of the evidence supports the claimant's position, so long as

substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  The Supreme Court has held that evidentiary conflicts

are "not uncommon" and that they are not a basis for overturning the ALJ's decision.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Sixth Circuit has ruled: "If the ALJ's

decision is supported by substantial evidence, then reversal would not be warranted even if

substantial evidence would support the opposite conclusion."  *Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007).

(4:08CV2540)

The ALJ has fully supported his well articulated decision with substantial evidence. Underwood has not.  Nevertheless, even if substantial evidence would *also* support Underwood's conclusions, that alone would not justify overturning the ALJ's decision.

**VI.  Conclusion and Recommendation**

For the foregoing reasons, the undersigned finds that substantial evidence supports the ALJ's conclusion that Underwood was not under a "disability" as defined by the Act and, therefore, is not entitled to benefits.  The Court recommends that the Agency's final decision denying benefits to James S. Underwood be affirmed in its entirety, the matter be dismissed, and that the referral to the undersigned be terminated.


    */s/ Benita Y. Pearson*

Dated: December 23, 2009          United States Magistrate Judge


**OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see* also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).